# In the United States Court of Federal Claims

No. 25-949

Filed: August 21, 2025

|  |  |
|---|---|
| JOHN W. MILLER, | ) |
|                 *Plaintiff,* | ) |
| v. | ) |
| THE UNITED STATES, | ) |
|                 *Defendant.* | ) |

## ORDER

    John W. Miller believes that he is owed money—a lot of money—by the United States, by Apple, Inc., and by what appears to be every judge that has ever ruled against him in a string of lawsuits. This has led to lawsuits in at least the Northern District of Texas, the District of South Carolina, the Western District of Washington, the Northern District of Georgia, the Southern District of New York, the Northern District of Illinois, the Eastern District of Virginia, the District of Columbia, several circuit courts, and this court. He alleges a conspiracy among judges to deny his enforcement of default judgments. The Government has moved to dismiss, arguing that Mr. Miller has not put forth any non-frivolous claim within this court's jurisdiction. Even giving liberal construction to Mr. Miller's claims, the court concludes that he fails to allege any non-frivolous claim within this court's jurisdiction. The court GRANTS the Government's motion to dismiss and DENIES-AS-MOOT all other pending motions.

**I.**     **Background**

    In his complaint, Mr. Miller brings three counts, which he identifies as "Claim I," "Claim II," and "Count II." In Claim I, he alleges that the Northern District of Texas issued him a default judgment against the United States for $12 million "arising from a judicial obstruction." ECF No. 1 ¶ 4. In Claim II, Mr. Miller also seeks $100 million for "constitutional injury and copyright interference." *Id.* ¶ 9. Here, he alleges that various officials of the United States "have unlawfully obstructed Plaintiff's exclusive rights under 17 U.S.C. § 106 by suppressing judicial enforcement of Plaintiff's copyright." *Id.* ¶ 10. The only official he identifies is the Chief Judge of the Southern District of New York. *Id.* Finally, in Count II, Mr. Miller alleges that various government officials "engaged in coordinated conduct that obstructed enforcement of Plaintiff's Final Judgment and exclusive rights under 17 U.S.C. § 106." *Id.* at 2.[1] This conduct included a

---

[1] Because Plaintiff did not number the paragraphs in Count II, the court cites the page number.

magistrate judge issuing "fraudulent recommendations," a district court judge "facilitat[ing] unconstitutional suppression of judgment enforcement," and a government attorney coordinating to "violate Plaintiff's First and Seventh Amendment rights." *Id*. These actions, according to Mr. Miller, "constituted a constitutional tort." *Id*.

## II. Standard of Review

Subject-matter jurisdiction over a case is a threshold matter, so if the court determines it lacks such jurisdiction, it must dismiss the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *see also* Rules of the United States Court of Federal Claims ("RCFC") 12(h)(3). The court asks whether its "general power to adjudicate in specific areas of substantive law" encompasses the subject matter of the dispute. *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999). It is Mr. Miller's burden to "establish[] subject[-]matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

This court's primary grant of jurisdiction is in the Tucker Act, 28 U.S.C. § 1491. Under the Tucker Act, this court has subject matter jurisdiction over "any claims against the United States founded either upon the Constitution, or any act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). But the Tucker Act does not create a cause of action. "[I]n order to invoke the jurisdiction of the Court of Federal Claims under the Tucker Act, a plaintiff must also rely on a right to money damages found in the Constitution, a statute or a government regulation, or a contract." *Ont. Power Generation, Inc. v. United States*, 369 F.3d 1298, 1301 (Fed. Cir. 2004). In other words, a plaintiff must identify a specific "separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citations omitted).

Because the Government moves to dismiss for lack of subject-matter jurisdiction, the court assumes the truth of Mr. Miller's undisputed allegations. *Reynolds*, 846 F.2d at 747. But the court may look at public records. *Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 883–84 (Fed. Cir. 1985) (explaining that, "[i]n deciding . . . a Rule 12(b)(1) motion, the court can consider . . . evidentiary matters outside the pleadings") (citations omitted); *JG Techs., LLC v. United States*, 156 Fed. Cl. 691, 699 (2021) (explaining that, in cases where jurisdictional facts are disputed, "the [c]ourt is not strictly confined to the pleadings and may 'find facts on its own'") (cleaned up). Finally, although the court holds Mr. Miller to a "less stringent standard[]" in his pleadings because he is proceeding pro se, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), that leniency does not relieve him of his jurisdictional requirements. *Kelley v. Sec'y, U.S. Dep't of Lab.*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

## III. Discussion

### A. Mr. Miller's tactics.

Before turning to the various pending motions, the court addresses Mr. Miller's incessant filing of meritless documents. Mr. Miller is a frequent litigant who files many documents in

every case he files.  He has a pattern.  As soon as a judge or clerk's office does not do what Mr. Miller demands, he claims to be owed tens of millions of dollars because that individual dared not to do what he demanded.  This case is no different.

This court quickly warned Mr. Miller that if he continued to inundate the docket with meritless filings, the court would consider revoking his electronic filing privileges or enjoin further filings.  ECF No. 20.  Mr. Miller did not slow down.  *See* ECF Nos. 23–52.  This court then denied several of these motions and explained to Mr. Miller that his filings were making it clearer that the court lacked jurisdiction and that the court would set one briefing schedule to resolve all the pending motions.  ECF No. 53.  The court warned him again about his excessive filing and made clear that under the forthcoming briefing schedule Mr. Miller would get one filing and one filing only.  *Id*. at 2.  Mr. Miller kept up his filing.

Then the Government moved to dismiss, ECF No. 59, which this court addresses below.  Mr. Miller then flooded the docket anew.  The court then revoked Mr. Miller's electronic filing privileges.  ECF No. 60.  As the court explained, Appendix E of this court's rules allow pro se litigants to file either on paper or via email.  But the rules make clear that "E-mail filing privileges may be revoked by the court at any time."  RCFC App'x E ¶ 9(b)(iv).  To be clear, the court simply revoked the email filing privileges and required Mr. Miller to submit any future filings through the United States Mail.  The court did not enjoin or limit any future filings.  Indeed, Mr. Miller has submitted several filings through the mail that have been accepted for filing.  Everything that Mr. Miller filed has now been docketed.

### B. Mr. Miller's motion to disqualify Government counsel is denied.

Among Mr. Miller's many filings are motions to disqualify the Government's counsel.  ECF Nos. 91–99.[2]  He contends that Government counsel is misleading the court, and that Mr. Miller will, true to form, be suing the Government's counsel personally for damages.  He thus moves the court to disqualify the Government's counsel and strike all filings he made, including the motion to dismiss.  These motions are frivolous.

A meritorious motion to disqualify opposing counsel is generally based on a *preexisting* relationship between the moving party and the challenged attorney.  *See generally* ABA Model Rules of Professional Conduct 1.7–1.12.  It is the duty to a present or former client that creates a conflict that may require an attorney's disqualification.  But here, the only complaint Mr. Miller has about the Government's counsel is that he moved to dismiss this case for lack of subject-matter jurisdiction.  ECF Nos. 92–93.  In other words, the Government's counsel is representing the interests of a party *adverse* to Mr. Miller.  That does not create any basis to remove Government counsel from this case.

And Mr. Miller also believes that by filing the motion to dismiss, the Government attorney now owes him $50 million.  ECF No. 66.  Pure nonsense.  He asserts the entitlement to these funds because the Government did not move to dismiss by a time Mr. Miller specified, even though the Government filed by the deadline this court set.  *Compare id*. (complaining that the Government did not file by 11:00 a.m. on June 20, 2025) *with* ECF No. 20 (court ordering

---

[2] Several of these filings are duplicates that Mr. Miller filed.

filing by 5:00 p.m. on June 20, 2025). Even if the Government's motion were late, and it was not, Mr. Miller does nothing to identify a source of law that would entitle him to compensation for a late filing.

The court DENIES Mr. Miller's motions to disqualify the Government's counsel.

### C.   This court need not recuse itself.

Mr. Miller has requested this case be reassigned to a "non-conflicted Article III judge." ECF No. 90 at 2. He has also named the undersigned as a defendant in a separate lawsuit. The court construes these filings as a motion for its recusal, which the court denies.

A federal judge must recuse himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This rule requires recusal "when a reasonable person, knowing *all* the facts, would question the judge's impartiality." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 882 F.2d 1556, 1568 (Fed. Cir. 1989) (emphasis in original) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1998)). Section 455(a) has inspired case law and guidance addressing what a judge must do if a disgruntled plaintiff sues that judge in another case in another court. "No hard-and-fast rule" applies. *Nwosu v. Am. Express Co.*, No. 1:24-cv-00615 (ACR), 2024 WL 2273201, at *1 (D.D.C. Apr. 18, 2024) (quoting *Makere v. Early*, No. 4:21-cv-96-AW-HTC, 2022 WL 20509712, at *1–2 (N.D. Fla. Sept. 29, 2022), *aff'd* per curiam, No. 22-13613, 2023 WL 7130938 (11th Cir. Oct. 30, 2023)). When sued elsewhere, a "judge is not automatically disqualified from participating in other, unrelated cases involving the same litigant, whether they are filed before or after the complaint in which the judge is a defendant." 2B *Guide to Judiciary Policy*, § 220, Advisory Opinion No. 103, at 190. That is because "judicial immunity usually will be a complete defense" against frivolous complaints. *Id.* And when a complaint is or will be dismissed on judicial immunity grounds, a "reasonable basis to question the judge's impartiality in unrelated cases" does not suddenly arise. *Id.*; *United States v. Grismore*, 564 F.2d 929, 933 (10th Cir. 1977) (explaining that a "judge is not disqualified merely because a litigant sues or threatens to sue him"). To the extent that Mr. Miller has a civil complaint pending against the undersigned as a defendant in that case, such a claim stems from this court's refusal to enforce a non-existent default judgment. The undersigned's judicial immunity to civil claims would prevent such a claim from moving past initial motions. *Bradley v. Fisher*, 80 U.S. 335, 351–52 (1871).

District courts faced with similar situations have also declined to recuse under § 455. For example, in *Nwosu*, the plaintiff sued the district judge personally after becoming dissatisfied with the judge's rulings. She surveyed several cases and Advisory Opinion No. 103, all of which led her to conclude that recusal was unnecessary. 2024 WL 2273201, at *1. As another example, in *Makere v. Early*, the district judge faced the same situation the undersigned faces here—a plaintiff who "serially sues every judge that he comes across in this case." 2022 WL 20509712, at *2. Mr. Miller serially threatens to sue or sues virtually every judge (and more than a few lawyers and court clerks) involved in his cases, and issues demands for payment from them personally. Indeed, Mr. Miller makes no secret that he will continue:

> Every judge, clerk, or federal official is hereby on notice: Any
> interference with the enforcement of my Final Judgments or the

4

> exclusive rights granted to me under U.S. Copyright Registration
> TXu 2-376-410 will be treated as a direct violation of
> constitutional law.  No claim of judicial immunity, sovereign
> immunity, or prosecutorial discretion shall shield such conduct.
> The exclusive rights I possess under U.S. Copyright law, in
> combination with Rule 69 enforcement and federal final judgment
> doctrines, supersede all such defenses.  I fully intend to pursue the
> imprisonment of any individual who attempts to obstruct or nullify
> those rights under color of law.

ECF No. 92 at 1.  And Mr. Miller has filed what he asserts is a complaint naming approximately 35 (the court lost count) judges and court staff as defendants, as well as various attorneys, alleging that they have not given him what he wanted—e.g., not issuing Rule 69 writs when Mr. Miller demanded them, dismissing his complaints, etc.  ECF No. 98.  In plain terms, Mr. Miller is attempting to do what the advisory opinion and precedents warn against—he is trying to pick his own judge by suing anyone and everyone that refuses to enforce his claims.  *Makere*, 2022 WL 20509712, at *2 ("If a litigant could disqualify any judge by simply suing him in a separate case, litigants could effectively choose their own judges.") (citation omitted).

Judicial immunity would also bar such a claim.  When a judge is performing his or her judicial duties, broad immunity from civil liability attaches.  *Stump v. Sparkman*, 435 U.S. 349, 355–57 (1978) (quoting *Bradley*, 80 U.S. at 351).  That means the judge is not liable even for acts taken "in excess of [the judge's] jurisdiction" and for those "alleged to have been done maliciously or corruptly."  *Id*. at 356 (cleaned up).  There are several reasons that judicial immunity exists, and this case provides a hornbook example of the wisdom of the doctrine.  As the Supreme Court explained, "[j]udicial immunity apparently originated, in medieval times, as a device for discouraging collateral attacks and thereby helping to establish appellate procedures as the standard system for correcting judicial error."  *Forrester v. White*, 484 U.S. 219, 225 (1988) (citations omitted).  "[J]udicial immunity also protected judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants."  *Id*.  Thus, "[i]f judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.  The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication."  *Id.* at 226–27.  Mr. Miller is both collaterally attacking the decisions he does not like and seeking to intimidate judges into granting him what he desires to avoid litigation.  Indeed, he even offers to withdraw any claims against those that give in to his demands.  ECF No. 102.

In the end, this court finds no basis for recusal in this case and denies Mr. Miller's motion insofar as it seeks recusal.

        **D.**      **Mr. Miller's attempt to assign his claim is ineffective.**

Before turning to the Government's motion to dismiss, the court must address Mr. Miller's response to that motion.  In it, he does not respond to the merits of the motion to dismiss.  Instead, he filed a "notice" of substitution under Rule 25(c), which this court construes as a motion to substitute parties.  Rule 25(c) provides:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in RCFC 25(a)(3).

RCFC 25(c). According to Mr. Miller, his company AppProved Software Corporation ("ASC") is now the sole owner of the copyright and the real party in interest for this and all his other actions. ECF No. 89 at 1. He seeks to substitute ASC as the plaintiff. ECF Nos. 89–90. As a result, Mr. Miller claims that the motion to dismiss "John W. Miller" is now moot and the court must turn to the merits. Mr. Miller's gamesmanship to try to avoid the motion to dismiss creates far more problems for him than merely failing to respond to the Government's motion to dismiss on its merits. This court declines to play along.

First, Mr. Miller purports to have assigned his claim against the United States to another party, ASC. This, however, is unlawful under the Anti-Assignment Act, which generally[3] prohibits the assignment of a claim against the United States. 31 U.S.C. § 3727; *Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1349 (Fed. Cir. 2002) (recognizing that the Act "broadly prohibit[s] . . . [the] assignment of claims against the United States"). In fact, the Act only allows the transfer of a claim *after* it has been allowed, the amount determined, and provision made for payment, which is not the case here.[4] 31 U.S.C. § 3727(b).

Nor did Mr. Miller comply with the Act's procedural requirements—i.e., that he provide the assignment to confirm that it "specif[ies] the warrant," and was "attested to by 2 witnesses." *Id*. Mr. Miller's assignment does neither. ECF No. 89 at 10. Thus, the assignment Mr. Miller attempted to make to ASC is unlawful and ineffective as to the United States. As a result, the failed assignment "leaves the claim where it was before the purported assignment." *Colonial Navigation Co. v. United States*, 181 F. Supp. 237, 240 (Ct. Cl. 1960). The proper plaintiff in this action is Mr. Miller, not ASC.

Second, even if Mr. Miller had lawfully assigned his claim, this case would not move forward because ASC does not have an attorney. This court's rules prohibit corporations from appearing without counsel. "A party may have only one attorney of record in a case at any one time and, with the exception of a *pro se* litigant appearing under RCFC 83.1(a)(3), must be represented by an attorney (not a firm) admitted to practice before this court." RCFC 83.1(c)(1). Mr. Miller contends that ASC is not a pro se individual and can move forward. ECF No. 90 at 2. He is wrong. To the extent Mr. Miller believes he may represent ASC before this court, he is wrong, because "[a]n individual who is not an attorney may represent oneself or a member of one's immediate family, *but may not represent a corporation, an entity, or any other person in*

---

[3] There is a statutory exception for transfers to certain financial institutions that is inapplicable here. 31 U.S.C. § 3727.

[4] As explained in detail below, although Mr. Miller claims to have certain default judgments underlying this action, the courts he claims issued those judgments have rejected the assertion that they entered default (or any other) judgments in his favor. As a result, any assertion that Mr. Miller's claims have been allowed is frivolous.

*any proceeding before this court*." RCFC 83.1(a)(3) (emphasis added).[5] Without an attorney, ASC could not proceed with this litigation. So even if Mr. Miller's assignment of his claim were valid, this case could not move forward without an attorney, who is admitted to this court's bar, appearing on behalf of ASC.

Finally, Mr. Miller appears to believe that by purporting to substitute parties, the motion to dismiss is moot. This argument misunderstands the motion to dismiss and mootness. The motion is not moot. As explained above, Rule 25(c) provides that the original party—John W. Miller—continues as the party until the court grants a motion to substitute. In other words, the court, not Mr. Miller, must determine who the proper plaintiff is. And until the *court* grants a motion to substitute the plaintiff, Mr. Miller remains the only plaintiff in this case. Construing Mr. Miller's notice as a motion, the court denies it for the reasons explained above. As a result, Mr. Miller remains the plaintiff before this court and the Government's motion to dismiss is not moot.

Of course, even if the court granted the motion to substitute it could still dismiss for lack of subject-matter jurisdiction under Rule 12(h)(3). *E.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) ("The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment.") (internal citation omitted). Nothing about this court's jurisdiction in this case turns on who the plaintiff is before it. As explained below, the lack of jurisdiction is so patently clear at this point that this court must dismiss.

### E. This court lacks subject-matter jurisdiction over Mr. Miller's claims.

The court turns next to the Government's motion to dismiss. Given that Mr. Miller's response only sought to substitute parties and does not otherwise respond to the Government's motion to dismiss, the Government's motion is unopposed. This court warned Mr. Miller twice that it would only give him one response to the motion to dismiss, ECF No. 53 at 4–5, ECF No. 54 at 1, and he has filed it. His failure to respond to any of the Government's arguments or make any argument about this court's jurisdiction leaves the Government's arguments unopposed and Mr. Miller without any basis to avoid dismissal. That said, the court prefers to consider the jurisdictional arguments to determine whether subject-matter jurisdiction exists over this case. It does not.

#### 1. This court lacks subject-matter jurisdiction over Claim I.

Recall that Claim I alleges that Mr. Miller sued the United States in the Northern District of Texas, and that court issued a final default judgment for $12 million against the United States. ECF No. 1 ¶¶ 4, 8. Mr. Miller further alleges that the United States never appealed or paid this judgment. *Id.* ¶ 5. This court lacks jurisdiction over Claim I for at least two reasons.[6]

---

[5] There is an exception inapplicable here that allows a non-lawyer to represent an immediate family member.

[6] It is unclear what role, if any, this court would have in enforcing a district court's judgment. Indeed, this court's rules do not include any analogue to Fed. R. Civ. P. 69 concerning writs of

First, to establish this court's jurisdiction, Mr. Miller must present a non-frivolous allegation that the United States owes him compensation. *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). Mr. Miller cannot satisfy that requirement here because the district court expressly *refused* to enter a default judgment against the United States, denying Mr. Miller's many motions for it to do so. As a result. Mr. Miller's assertion that he holds a default judgment against the United States is patently frivolous.

To set the stage, Mr. Miller filed Case Number 22-cv-2694 in the Northern District of Texas against the United States. In it, he alleged that certain judges on the United States Court of Appeals for the Eleventh Circuit committed various crimes against him (these claims fit Mr. Miller's pattern—once the judges ruled against him, he sued them). The United States, however, moved to dismiss that case for lack of jurisdiction, which the district court granted. As for any assertion that there was a default judgment, the district court's docket renders that claim frivolous:

- Feb. 9, 2023 – Plaintiff filed a motion for entry of default and a motion for entry of default judgment. ECF Nos. 24–25.[7] ECF No. 24 is the same document that Plaintiff filed as Exhibit A to his complaint before this court.[8]

- Feb. 10, 2023 – A docket entry provides "The clerk *declines* to issue default at this time, as an attempt to defend has been made by defendant." (emphasis added).

- Feb. 10, 2023 – Plaintiff again moved (he said "demand[ed]") the clerk enter default. ECF No. 26.

- Feb. 13, 2023 – Plaintiff amended his motion for default. ECF No. 29.

- Feb. 14, 2023 – A docket entry provides "The clerk *declines* to issue default at this time, as an attempt to defend has been made by defendant." (emphasis added).

- March 2, 2023 – Plaintiff filed a notice of default. ECF No. 34.

- March 3, 2023 – Plaintiff filed a notice of default judgment. ECF No. 35.

---

execution. Because the Government does not raise the issue and its resolution is not necessary to decide the Government's motion, the court assumes (albeit quite skeptically) without deciding that it could enforce a default judgment issued by another court through a judgment issued by this court.

[7] All ECF citations in this list come from *Miller v. United States Gov't*, No. 3:22-cv-02694-M-BH, in the United States District Court for the Northern District of Texas.

[8] Mr. Miller's Exhibit A to his complaint, ECF No. 1-2, still has the ECF Header from the Northern District of Texas that identifies it as Document 24 in that case.

- May 18, 2023 – Plaintiff filed a request for the clerk to enter default. ECF No. 42.

- May 22, 2023 – A docket entry provides "The clerk *declines* to issue default at this time, as an attempt to defend has been made by defendant." (emphasis added).

- Aug. 15, 2023 – The district court dismissed Plaintiff's claims. ECF Nos. 53–54.

- Aug. 21, 2023 – Plaintiff filed a notice of default. ECF No. 56.

- Aug. 16, 2024 – After several unsuccessful motions for relief from the judgment, Plaintiff moved to certify default and default judgment. ECF No. 77.

- Aug. 29, 2024 – The district court denied Plaintiff's motion to certify default and default judgment. ECF No. 78.

As this record makes clear, the notion that the district court entered a default judgment is frivolous. And the district court's last order is the final nail in Claim I's coffin:

> In support of his Motion, Plaintiff claims the Clerk of Court entered a default against Defendant and the Court entered a default judgment against Defendant. Plaintiff points to ECF No. 24 and ECF No. 25. These filings, however, *do not show what Plaintiff claims they show,* as they are Plaintiff's own filings for default and default judgment. *The Clerk of Court explicitly declined to issue a clerk's entry of default.* Accordingly, there is *no basis on which the Court could certify a default or default judgment, as neither have been entered in this case.* Plaintiff's Motion is therefore denied.

*Id*. at 1 (emphasis added). Recall that ECF No. 24 in the district court is the *same document* that Plaintiff asserts is the default judgment he seeks to enforce in this court (Exhibit A to his complaint). In plain terms, Plaintiff is seeking to enforce the same "judgment" that the district court held is not a judgment at all. As a result, there is no non-frivolous claim that Plaintiff holds a default judgment against the United States and this court lacks jurisdiction over Claim I. *Jan's Helicopter*, 525 F.3d at 1309.

Second, to the extent that he asserts the district court was wrong to deny his many motions for default judgment, this court lacks jurisdiction to hear such a collateral attack on the district court's final decision. It is long settled that "the Court of Federal Claims lacks jurisdiction to review the merits of a decision rendered by a federal district court." *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1385 (Fed. Cir. 2017) (citation omitted). To the extent Mr. Miller believes the district court was wrong, his recourse (if any) was in the appellate process, not this court. Thus, even if Claim I were not frivolous, this court would still lack jurisdiction under *Petro-Hunt*. Again, Mr. Miller alleges in Claim I that the Northern District of Texas entered a default judgment against the United States. *See* ECF No. 1 ¶¶ 7–8 (Claim I).

9

But that court explicitly held that it did not enter any default judgment against the United States. In fact, it dismissed the complaint for lack of subject-matter jurisdiction. This court lacks jurisdiction to review the district court's order that no default judgment exists.[9]

In the end, this court lacks subject-matter jurisdiction over Claim I under *Jan's Helicopter* and *Petro-Hunt*. The court grants the Government's motion to dismiss Claim I.

          2.      <u>This court lacks subject matter jurisdiction to hear Claim II and Count II.</u>

Mr. Miller makes related allegations about various federal judges and others that he claims are obstructing his rights to claimed copyright damages. ECF No. 1 at 2. The court lacks jurisdiction to hear these claims as well.

First, this court lacks jurisdiction over claims against individual judges or other officials. As the Supreme Court explained long ago, "if the relief sought is against others than the United States the suit as to them *must be ignored* as beyond the jurisdiction of the court." *United States v. Sherwood*, 312 U.S. 584, 588 (1941) (emphasis added). Mr. Miller has also littered the docket with "Rule 69 demand[s]" for personal liability and writs of execution for exorbitant amounts of money from these individuals and others. Because this court has no jurisdiction over any individual, it cannot issue such a writ. And unlike the Federal Rules of Civil Procedure, the Rules of the Court of Federal Claims[10] do not have a Rule 69 or any analog of that rule. This court's rules state: "**Rule 69. Execution** [Not used.]" RCFC 69 (emphasis in original).

Second, Mr. Miller contends that various judges and individuals have perpetrated a "constitutional tort" against him. ECF No. 1 at 2. This court, however, lacks jurisdiction over any claim sounding in tort because the Tucker Act limits this court's jurisdiction to cases "not sounding in tort." 28 U.S.C. § 1491. Because Congress withheld tort claims from this court's jurisdiction, Mr. Miller's tort claims fail.

Third, Mr. Miller alleges a conspiracy to "violate Plaintiff's First and Seventh Amendment rights." ECF No. 1 at 2. This court lacks however jurisdiction to hear claims alleging violations of the First or Seventh Amendments because neither is a money-mandating source of law. *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (holding that this court lacks jurisdiction over claims under the First Amendment); *Allen v. United States*, No. 2021-1631, 2022 WL 180760, at *2 (Fed. Cir. Jan. 20, 2022) (per curiam) (holding that this court lacks jurisdiction to hear claims under the Seventh Amendment). Therefore, these Amendments do not satisfy the money-mandating requirement of this court's jurisdiction.

Finally, Mr. Miller claims that the various judges' decisions are violating his rights. ECF No. 1 at 2. But this court lacks jurisdiction to hear such collateral attacks on the district courts' decisions. *Petro-Hunt*, 862 F.3d at 1385. To the extent that Mr. Miller believes any or all the

---

[9] This is apart from any grounds for dismissal for failure to state a claim upon which relief may be granted under the doctrine of res judicata.

[10] This court's rules of procedure apply to cases pending before it, not the Federal Rules of Civil Procedure. 28 U.S.C. § 2503(b).

decisions other courts issued in his cases were wrongly decided, his remedy (to the extent there is any) is before the appropriate court of appeals, not this court.

## IV. Conclusion

For the reasons stated above, the court **GRANTS** the Government's motion to dismiss for lack of subject matter jurisdiction, ECF No. 59.  All other pending motions are **DENIED-AS-MOOT**.  The Clerk's Office is directed to enter judgment accordingly.

It is so ORDERED.

s/ Edward H. Meyers<br>
Edward H. Meyers<br>
Judge